UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00022-TBR

MICHAEL GRISSOM                                                                                            Plaintiff,

v.

ILLINOIS CENTRAL RAILROAD CO.                                                              Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court upon the objection of Defendant Illinois Central Railroad Company ("ICRR" or "the Railroad"). (Docket No. 71.) ICRR objects to a discovery order entered by the Magistrate Judge on August 13, 2014. (Docket No. 68.) The lawsuit arises out of an alleged accident that occurred on May 1, 2012, in ICRR's Fulton, Kentucky rail yard. Grissom alleges that as he crossed the end of a railcar, the hand brake wheel he was holding detached from the car, causing him to fall to the ground and injure his back.

The challenged order concerns, in relevant part, the transcript of an interview of ICRR Trainmaster Jeremy Brown conducted by ICRR Risk Mitigation Officer Charles Baker shortly after the alleged incident.[1] The Magistrate ordered ICRR to produce the transcript, characterizing it as a "railroad accident report." (Docket No. 68 at 9-10.) The Magistrate concluded that production was appropriate because the transcript was either generated in the "normal course of business" or Grissom had "substantial need" for it. (Docket No. 68 at 10.) ICRR now argues that the Magistrate's ruling in this regard was both contrary to applicable law and clearly erroneous.

---

[1] ICRR explains that a "trainmaster" "supervises and manages the employees, train traffic, and rail yard(s) in his or her particular segment of ICRR's rail system," (Docket No. 71-1 at 1, n.1), and that a "Risk Mitigation Officer" is the Railroad's title for its railroad claims agents. (Docket No. 71-1 at 1, n.2.)

1

**Standard of Review**

This matter was referred to the Magistrate pursuant to 28 U.S.C. § 636, which Congress enacted to relieve the burden of the federal courts by permitting assignment of certain duties to magistrate judges. *Gomez v. United States*, 490 .U.S. 858, 869-70 (1989) (reviewing the legislative history of § 636). Section 636(b) identifies the powers that may be assigned to magistrates by the district court. It also sets forth the applicable standard of review for objections to the ruling of a magistrate on such assigned matters. *See* 28 U.S.C. § 636(b) ("A judge of the court may reconsider any pretrial matter under subparagraph (A) [relating to nondispositive orders] where it has been shown that the magistrate's order is clearly erroneous or contrary to law."). In *United States v. Curtis*, the Sixth Circuit explained:

> Thus, §636 creates two different standards of review for district courts when a magistrate court's finding is challenged in district court. A district court shall apply a "clearly erroneous or contrary to law" standard of review for the "nondispositive, preliminary measures of § 636(b)(1)(A)." *United States v. Raddataz*, 447 U.S. 447, 673 (1980). Conversely, "dispositive motions" accepted from § 636(b)(1)(A), such as motions for summary judgment or for the suppression of evidence, are governed by the *de novo* standard. *Id.* at 674.

237 F.3d 598, 603 (6th Cir. 2001). Rule 72 of the Federal Rules of Civil Procedure "has implemented this statutory provision." *Callier v. Gray*, 167 F.3d 977, 980 (6th Cir. 1999). The relevant portion of Rule 72 provides in subsection (a) that this Court shall consider objections to a magistrate judge's order on a nondispositive matter and "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

Our circuit holds this standard of review to be a limited one. *See Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) ("When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to 'reconsider' the determination, but under a limited standard of review.") (citing 28 U.S.C. § 636(b)(1)(A)); *see generally* Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure*, § 3068 (West 2007) (explaining that Rule 72

implements the legislative mandate of Section 636(b)(1), the provision in the 1976 amendments that clarified and expanded the authority delegable to a magistrate judge in pretrial matters).

Several decisions from courts of this circuit discuss the "clearly erroneous" and the "contrary to law" standard found in § 636(b)(1)(A) and Rule 72(a). In *Tri-Star Airlines, Inc. v. Willis Careen Corp. of L.A.*, our sister district court for the Western District of Tennessee explained:

> A judicial finding is deemed to be clearly erroneous when it leaves the reviewing court with "a definite and firm conviction that a mistake has been committed." *Heights Comm. Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). Under the clearly erroneous standard, a court reviewing a magistrate judge's order should not ask whether the finding is the best or the only conclusion that can be drawn from the evidence. Further, this standard does not permit the reviewing court to substitute its own conclusion for that of the magistrate judge. Rather, the clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable. *Id.*

75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999); *see also In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) ("Review under Rule 72(a) provides 'considerable deference to the determination of the magistrates.' A finding is clearly erroneous only when the reviewing court is left with a definite and firm conviction that a mistake has been committed." (citations omitted)).

A different standard applies when the district court examines the Magistrate Judge's legal conclusions. Such conclusions "are reviewed under the plenary 'contrary to law' standard." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (citing *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205) (N.D. Cal. 1983)). Accordingly, a district court must exercise its independent judgment with respect to the legal conclusions of a magistrate judge on review pursuant to Federal Rule of Civil Procedure 72(a). *Id.* (citing *Hawkins v. Ohio Bell Tel. Co.*, 93 F.R.D. 547, 551 (S.D. Ohio 1982), *affirmed*, 785 F.2d 308 (6th Cir. 1986)); *see also In re Nat'l Gas Commodities Litig.*, 232 F.R.D. 208, 211 (S.D.N.Y. 2005) ("An order may be

3

deemed 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" (citing *Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

**Analysis**

ICRR grounds its objection upon two arguments. First, it contends that the ruling is contrary to law, as most courts have concluded that interviews conducted by railroad claims agents following an accident are created "in anticipation of litigation" rather than in the normal course of business. *See Almaguer v. Chicago, Rock Island & Pacific R.R. Co.*, 55 F.R.D. 147, 149 (D. Neb. 1972). ICRR further argues that the ruling is clearly erroneous in light of the record: according to ICRR, Grissom provides no evidence or argument demonstrating a substantial need for the transcript at issue. ICRR accordingly argues that to the extent that the Magistrate ruled that Grissom had substantial need for the transcript, this ruling finds no support in the record. The Court will consider each argument in turn.

ICRR first contends that the transcript at issue was not generated in the normal course of business, but was created in anticipation of litigation—a theory confirmed, ICRR says, by the fact that only fourteen days passed between Grissom's accident and ICRR's receipt of a letter of presentation from his counsel. (*See* Docket No. 66-3.)[2]

"The work-product doctrine protects . . . trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citation omitted). Rule 26 of the Federal Rules of Civil Procedure governs the work-product privilege. In 1970, Congress amended Rule 26(b)(3)(A) to extend work product protection to the work of non-attorneys. Under the amended Rule, documents can come within this privilege if "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative

---

[2] ICRR further points to the deposition of Adrian Crawford, a crew member who worked alongside Grissom on the evening of the incident. Crawford, a union representative, traveled to the hospital and "played the role of local chairman and made sure that [hospital personnel] understood it wasn't Worker's Comp, it was a [Federal Employers Liability Act] claim." (Adrian Crawford Dep., Docket No. 66-4 at 31:18-20.)

4

(including his attorney, consultant, surety, indemnitor, insurer, or agent)." As the advisory committee note states:

> Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his own behalf . . . . Even though a party may ultimately have to disclose in response to interrogatories or request to admit, he is entitled to keep confidential documents containing such matters prepared for internal use.

Fed. R. Civ. P. 26, Notes of Advisory Committee on Rules, 1970 Amend., Subdivision (b)(3). The amendment aligned with the principle of the Rule, protecting the adversary role of attorneys in a system of open discovery—that is, maintaining "that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side." Advisory Committee Notes to the 1970 Amendment to Rule 26.

ICRR points to *Almaguer*, the first case to consider the effect of Rule 26(b)(3)(A) upon statements taken by a railroad claims agent. In *Almaguer*, the District of Nebraska noted that after a railroad employee has been injured in an accident, "the anticipation of the filling of a claim against the railroad . . . is undeniable, and the expectation of litigation in such circumstances is a reasonable assumption." *Almaguer*, 55 F.R.D. at 149. Accordingly, *Almaguer* held that statements taken by a railroad agent are entitled to work product protection, as they are presumed to have been taken in anticipation of litigation. Subsequent decisions echo the *Almaguer* rule, confirming that post-accident witness statements taken by a railroad claims agent are made "in anticipation of litigation." *See, e.g.*, *Gargano v. Metro-North*, 222 F.R.D. 38, 40 (D. Conn. 2004) ("Statements taken by claims agents immediately after an accident in anticipation of litigation are protected by Rule 26(b)(3)."); *Eoppolo v. Nat'l R.R. Passenger Corp.*, 108 F.R.D. 292, 295 (E.D. Penn. 1985) ("It is clear from the Advisory

5

Committee's Notes as well as existing case law that the statements taken by a claims agent immediately after an accident in anticipation of litigation are protected by Rule 26(b)(3).").

In ruling otherwise, the Magistrate relied in part upon *Stout v. Norfolk & W. Ry. Co.*, 90 F.R.D. 160 (S.D. Ohio 1981). The dispute in *Stout*, another Federal Employers Liability Act case, concerned the Magistrate's decision to order the defendant railroad to produce statements of witnesses. The Magistrate determined that such statements, gathered before attorney involvement in a given case, does not constitute work product; rather, they constitute records made in the usual course of business and are thus discoverable. *Id.* at 160. In its review of the magistrate's decision, *Stout* acknowledged three varying approaches to this issue: first, that such statements are prepared in the regular course of business and are not subject to Rule 26(b)(3)'s requirements; second, that although the reports may be prepared in anticipation of litigation, they are nonetheless discoverable because they are both necessary and not reproducible after a lapse of time; and finally, that such reports are prepared in anticipation of litigation and that movants must show both substantial need and undue hardship. *Id.* at 161 (citations omitted).

Although *Stout* concluded that the statements at issue were not taken in anticipation of litigation, the court noted that the plaintiff's request was "confined to statements"; therefore, the court was "not confronted with a request for . . . any disclosure of 'mental impressions, conclusions, legal theories, [or] legal theories of a party's attorney or other representative concerning the litigation.'" *Id.* at 162 (quoting Fed. R. Civ. P. 26(b)(3)). This is not necessarily the case here; as discussed below, ICRR contends that production of the transcript would improperly divulge its strategic and subjective impressions, which are contained in the interview. Moreover, *Stout* did not hang its hat upon the work product issue: it clarified that even if the statements *were* taken in anticipation of litigation, "their contemporaneity renders them so unique and unduplicable that need and hardship are clearly established." *Id.* Accordingly, *Stout* does not dictate the Court's conclusion in the instant case.

Moreover, *Stout* has been distinguished, if not criticized, by other courts. *Eoppolo*, for example, acknowledged *Stout*'s reasoning but found that at the litigation's early stages, "where plaintiff makes a broad and [all-encompassing] request for all statements and reports, and has just begun to conduct discovery, the better position is to require a showing of hardship and need." 108 F.R.D. at 295 n.1. Here, ICRR identified the interview in a privilege log provided in response to Plaintiff's Interrogatory No. 5. (*See* ICRR's Resp. to Pl.'s Interrogatories, Docket No. 65-4, at 5.) This interrogatory can certainly be characterized as "broad and all-encompassing."[3] Accordingly, the *Eoppolo* reasoning is apposite.

The Magistrate also relied upon *Howard v. Fowler Bros., Inc.*, 2011 WL 3438407 (W.D. Ky. Aug. 5, 2011), as support for the proposition that substantial need exists for a railroad accident report. (Docket No. 68 at 10.) However, this reliance is misplaced: *Howard* concerned injuries resulting from not a railroad, but a broken toilet at a Kentucky Fried Chicken ("KFC") store. *Id.* at *1. At any rate, the *Howard* defendants claimed that KFC employee statements were prepared in anticipation of litigation and thus protected by the work product doctrine. *Id.* The plaintiff did not contest this point, but instead

---

[3] The relevant interrogatory reads:

> List and identify each report or writing, either oral or written, made by or received by Defendant Illinois Central Railroad Company concerning the claim or accident detailed in the Complaint and state the name, address, telephone number and classification or occupation of any person making the report and any person, agency or governmental body receiving each such report or writing, including the date and time received, the official name and description [of] each such report, and attach a copy of any written documents hereto. This request includes any "accident report" and/or "unsafe condition report" filed by Plaintiff or others regarding the subject incident. This request also includes all such writings made in the ordinary course of business, including court documents, depositions, pleadings, and papers of every nature relating to the subject claim or prior similar worker claims of which you have knowledge, exclusive [of] attorney-client privilege[d] communications. Further, it shall include any reports describing the activities or the manner in which the Plaintiff was working, any and all such statements, writing or reports by others regarding any aspect of the accident or the subsequent investigation of same made during the ordinary course of business (which includes all writings or documents generated at any re-enactment or simulation conducted by Defendant). If Defendant claims a "privilege" against furnishing any documents, in order that Plaintiff may determine whether or not an in camera review is necessary by the Court, provide a privilege log for any and all documents deemed privileged.

(Docket No. 65-4 at 5.)

argued that the statements were nonetheless discoverable given her substantial need for them. *Id.* Accordingly, *Howard* provides no guidance as to whether such statements were made in the normal course of business rather than in anticipation of litigation.

In light of the above analysis, the Court concludes that the Magistrate's legal conclusion that the transcript was generated "in the normal course of business" and not "in anticipation of litigation" is contrary to law. This conclusion, however, does not end the analysis: because any claim of work product protection can be overridden by the requesting party's substantial need of the materials, the Court will turn to ICRR's next argument.

ICRR next objects that the Magistrate's factual findings as summarized in the Discovery Order were clearly erroneous regarding Grissom's demonstration of substantial need for the transcript. Federal Rule of Civil Procedure 26(b)(3)(A)(ii) explains that interviews conducted "in anticipation of litigation" are discoverable if the party seeking such interviews demonstrates "substantial need" for them.

Although the Magistrate Judge determined that Grissom had "substantial need" for the transcript, (Docket No. 68 at 10), the Court finds no indication that Grissom argued a substantial need for the transcript or presented evidence that would indicate such a need. Rather, he argued exclusively that the interview at issue was created in the regular course of business and not in anticipation of litigation. (*See* Pl.'s Mem. Supp. Mot. Compel, Docket No. 65-1; Pl.'s Reply Supp. Mot. Compel, Docket No. 67.) There has been no showing that Grissom "has substantial need for the materials to prepare [his] case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

Although the Court agrees with ICRR that the Magistrate's decision finds little basis in the record, the Court cannot at this point claim a "definite and firm conviction that a mistake has been committed." *Guiden*, 2013 WL 4500319 at *3 (internal quotation and citation omitted). Indeed, this Court has emphasized the particular value of statements taken shortly after the events in question: they

8

are "unique, in that they provide an immediate impression of the facts." *Howard,* 2011 WL 3438407 at *2 (citing 8 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure § 2025 (3d ed. 2011)). *See also Southern Ry. Co. v. Lanham*, 403 F.3d 119, 128 (5th Cir. 1968) (explaining that statements taken shortly after an accident "provide an immediate impression of the facts that cannot be recreated or duplicated by a deposition that relies upon memory").

The contemporaneity of the transcript at issue weighs in favor of permitting its discovery. However, ICRR argues that this transcript contains its "mental impressions, conclusions, opinions, and legal theories." (Docket No. 71-1 at 11.) Only "fact" work product is discoverable. *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 895 (M.D. Tenn. 2010). Sections of the interview that reflect investigatory or strategic matters could unfairly alert Grissom to ICRR's work product.

Given the ambiguity concerning this matter, and the possibility that the transcript contains both "fact" and "opinion" work product, the Court will refrain from issuing its Order pending an *in camera* review of the relevant evidence. Upon such review, the Court will prohibit disclosure of any protected information. Of course, the work-product doctrine does not protect underlying facts from disclosure. *See Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000). Accordingly, such review will also ensure that Grissom is provided the factual matter that he seeks.

## CONCLUSION

Therefore, in accordance with the above discussion, ICRR's Objection, (Docket No. 71), will be GRANTED to the extent that the Court will conduct an *in camera* review of the evidence at issue. An appropriate order will issue contemporaneously with this Memorandum Opinion.